UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:

DON KARL JURAVIN,

     Debtor.

_____/

DON KARL JURAVIN,
Case No. 6:18-bk-06821-KSJ

     Applicable Debtor.

_____/

DENNIS D. KENNEDY,
AS CHAPTER 7 TRUSTEE OF THE
ESTATE OF DON KARL JURAVIN,

     Plaintiff,

v.

SHAY ZUCKERMAN, ZUCKERMAN
& CO. A/K/A SHAY ZUCKERMAN & CO.
A/K/A SHAY ZUCKERMAN & CO. LAW FIRM,
NOAM BEN-ZVI, NOAM BEN-ZVI LAW FIRM,

     Defendants.

_____/

Chapter 7

Case No. 6:18-bk-06821-KSJ

Case No. 6:20-bk-01801-KSJ

*Jointly Administered with*
Case No. 6:18-bk-06821-KSJ

Adv. Pro. No. _____

## COMPLAINT

     Dennis D. Kennedy, as Chapter 7 Trustee for the Estate of Don Karl Juravin ("Trustee"),

through counsel, files this Complaint to Avoid and Recover Fraudulent Transfers, Preferential

Transfers, and for Turnover against Shay Zuckerman ("Mr. Zuckerman"), Zuckerman & Co. a/k/a

Shay Zuckerman & Co. a/k/a Shay Zuckerman & Co. Law Firm ("Zuckerman Law Firm"), Noam

Ben-Zvi ("Mr. Ben-Zvi"), and Noam Ben-Zvi Law Firm ("Ben-Zvi Law Firm"), pursuant to 11

U.S.C. §§ 542, 544, 547, 548, and 550 and Chapter 726, *Florida Statutes* ("FUFTA"), and in

support thereof, alleges as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of this Complaint pursuant to 28

U.S.C. §§ 1334 and 157.

2.    Venue is proper in this district under 28 U.S.C. § 1409.

3.    This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157

(b)(2)(A), (E), and (H).

## THE PARTIES

*The Trustee*

4.    Plaintiff is the Chapter 7 Trustee for the bankruptcy estate of Don K. Juravin.

5.    Dennis D. Kennedy, as serves as the chapter 7 trustee for the estate of Must Cure

Obesity, Co., case no. 20-bk-01801-KSJ, pending in this Court (the "MCO Bankruptcy Case").

*Shay Zuckerman and the Zuckerman Law Firm*

6.    Mr. Zuckerman is an individual residing in Israel.

7.    Mr. Zuckerman is also a practicing Israeli attorney at the Zuckerman Law Firm.

8.    Zuckerman Law Firm is located at Hayarkon St. 113, Tel Aviv 63573, telephone

03-5754883, fax 03-5754884.

9.    Mr. Zuckerman and the Zuckerman Law Firm have represented the Debtor and/or

the Juravin Entities (as defined below) for several years.

*Noam Ben-Zvi and the Ben-Zvi Law Firm*

10.    Mr. Ben-Zvi is an individual residing in Israel.

11.     He is a practicing Israeli attorney at the Ben-Zvi Law Firm.

12.     Mr. Ben-Zvi and/or the Ben-Zvi Law Firm's addresses are 10 Rishon Lezion, Petach Tikva, Israel or 23 Bar Cochva, Bnei Brak, Israel 5126002.

13.     The email addresses associated with Mr. Ben Zvi are: noam@nbz−law.co.il and office@nbz−law.co.il.

14.     Mr. Ben-Zvi is or was employed by or affiliated with Zuckerman Law Firm.

15.     Mr. Ben-Zvi and Ben-Zvi Law Firm have represented the Debtor and the Juravin Entities for several years.

## BACKGROUND

### *The Debtor's Business Affairs.*

16.     From 2009 through at least 2016, Debtor was an owner, officer, or representative of numerous entities, including without limitation, Roca Labs, Inc. ("Roca Labs"); Roca Labs Nutraceutical USA, Inc. ("RLN"); Must Cure Obesity, Co. ("MCO"); Juravin, Incorporated ("JINC"); and Zero Calorie Labs, Inc. ("ZCL") (collectively, the "Juravin Entities").

17.     Debtor exercised authority and control over the Juravin Entities' advertising and sale of dietary supplements and food products, including the Roca Labs "Formula" and "Anti-Cravings" powder, to consumers throughout the United States, as a safe and cost-effective alternative to gastric bypass surgery to combat obesity and achieve substantial weight-loss.

18.     Individual consumers paid the Debtor and/or the Juravin Entities hundreds of dollars for these worthless weight loss products which were nothing more than a fake medical regime purportedly designed to help consumers lose weight.

19.     Debtor and the Juravin Entities intended to deceive consumers by marketing the weight-loss products so that the consumers would buy the weight-loss products and enrich the Debtor.

20.     At all times material hereto, acting alone or in concert with others, Debtor formulated, directed, controlled, had the authority to control, or participated in the false advertising and other deceptive business practices perpetrated by the Juravin Entities.

21.     Debtor and the Juravin Entities operated as a common enterprise while engaging in deceptive business practices and fraudulent activities.

22.     Each of the Juravin Entities was created to further the deceptive and fraudulent weight-loss scam, or to conceal funds of the scam or of other scams created or perpetrated by the Debtor.

23.     Each of the Juravin Entities was created, formed, and operated for an improper purpose.

24.     At all times material hereto, Debtor had authority and control over the Juravin Entities.

25.     At all times material hereto, the Juravin Entities were mere instrumentalities of the Debtor.

26.     At all times material hereto, Debtor used the bank accounts of the Juravin Entities as his own personal piggy bank.

27.     At all times material hereto, Debtor maintained control of the accounts of the Juravin Entities.

28.     At all times material hereto, Debtor transferred substantial funds between and among the bank accounts of the Debtor and the Juravin Entities.

29.    For example[1], in the four-year period prior to the Juravin Petition Date the Debtor transferred the following:

a.    At least $2,202,915.58 from his personal accounts to accounts held by MCO;

b.    He transferred at least $2,833,206.28 from MCO's accounts to his personal accounts;

c.    He transferred at least $1,000,077.00 from MCO's accounts to JINC's accounts.

d.    The Debtor transferred at least $2,005,557.00 from his personal accounts to JINC's accounts;

e.    He transferred at least $587,392.15 from JINC accounts to the Debtor's personal accounts;

f.    He transferred at least $476,710.05 from the JINC accounts to MCO's accounts.

g.    The Debtor transferred at least $964,400.00 from his personal accounts to accounts held by RLN.

30.    From November 1, 2012 to January 29, 2016, the Debtor transferred at least $1,834,731.43 from RLN's accounts to his personal accounts, and at least $1,160,100.00 from RLN's accounts to JINC's accounts.

31.    Due to the Debtor's intermingled accounts, and the extent of the transfers between and among such accounts, a transfer from a Juravin Entity account constitutes a transfer of property of the Debtor.

---

[1] The specific transfers referenced in this paragraph and the following paragraph are meant as examples only. The Debtor failed to adequately respond to discovery in this case and the Trustee obtained a "break order" (Doc. No. 502) to gain access to the Debtor's electronic records. The Trustee has only recently obtained access to those records, which will likely disclose more transfers of this type.

## PROCEDURAL HISTORY

### *The FTC Case.*

32.    On September 24, 2014, the Federal Trade Commission ("FTC") filed a Complaint for Permanent Injunction and Other Equitable Relief, initiating case number 8:15-cv-02231, in the United States District Court for the Middle District of Florida ("FTC Case"), against Roca Labs; RLN; Don Juravin; and George C. Whiting, alleging claims for deceptive trade practices under Sections 5(a) and 12 of the Federal Trade Commission Act.

33.    On February 19, 2016, the FTC filed an Amended Complaint to name additional defendants, MCO; JINC; and ZCL.

34.    The FTC alleged that Debtor and his codefendants falsely or deceptively advertised their weight-loss products, causing over $25 million in consumer injury.

35.    The FTC also alleged Debtor and his codefendants unfairly used non-disparagement clauses in their sale terms for these products as part of their scheme, purporting to prohibit consumers from making truthful or non-defamatory negative comments or reviews about Debtor and his codefendants, their products, or their employees.

36.    The District Court entered a temporary restraining order against Debtor and his codefendants to halt their fraudulent scheme, and later entered a preliminary injunction and asset freeze order.

37.    In April 2018, the FTC moved for summary judgment against Debtor and his codefendants on all counts, including its claim for monetary relief.

38.    Debtor, who was represented by counsel throughout the FTC Case, opposed the FTC's motion and moved for partial summary judgment solely on the unfair non-disparagement clause claim.

39.    In September 2018, the District Court issued an order granting summary judgment to FTC on all counts as to liability, but requiring further briefing as to the amount of monetary relief.

40.    The District Court denied Debtor's motion for partial summary judgment.

41.    In the Summary Judgment Order, the District Court found that Debtor and his codefendants were liable for violating Sections 5 and 12 of the FTC Act because they:

   a.  made false and unsubstantiated weight-loss claims about their products;

   b.  falsely claimed that use of their products was scientifically proven to have a ninety-percent success rate in forcing users to eat half their usual food intake and cause substantial weight loss;

   c.  deceptively failed to disclose their financial relationship to testimonialists who worked for them, and their control of a supposedly independent and objective information website that they used to promote their products;

   d.  misrepresented the nature of that purportedly independent site;

   e.  misrepresented that they would keep their customers' private health information confidential;

   f.  misrepresented that consumers had agreed to non-disparagement clauses in exchange for a substantial discount on the products;

   g.  unfairly suppressed negative information about Debtor and his codefendants and their falsely advertised products, to the detriment of subsequent purchasers, by making threats to sue, and filing of lawsuits against, dissatisfied consumers for violating non-disparagement clauses in their online sales contracts.

42.    Further, the Honorable Mary Scriven of the United States District Court for the Middle District of Florida found that Debtor was jointly and severally liable with the Juravin Entities for their deceptive conduct because they operated as a common enterprise under his ownership and control, with common officers, business functions, employees, and office locations, he knew about the false and deceptive representations, he participated in the deceptive acts, and he had authority to control them.

43.    On November 6, 2018, the District Court issued an order for $25,246,000.00 in monetary relief against Debtor and his codefendants.

44.    On January 4, 2019, the District Court entered a permanent injunction and a Final Judgment against Debtor and the Juravin Entities in the amount of $25,246,000.00.

### The Juravin Bankruptcy Case.

45.    On October 31, 2018 (the "Juravin Petition Date"), the Debtor, Don K. Juravin, filed this Chapter 7 bankruptcy case (the "Juravin Bankruptcy Case").

46.    The Trustee was duly appointed as the Chapter 7 Trustee.

47.    On September 16, 2019, the Juravin Bankruptcy Case was converted to Chapter 11 from Chapter 7, upon the Debtor's motion.

48.    On March 16, 2020, after sustaining all objections to confirmation of the Debtor's proposed Chapter 11 plan and finding that the Debtor "is unable to articulate any reasonable way to succeed in [the] Chapter 11 case", the Court re-converted the case back to Chapter 7.

49.    On October 5, 2020, the United States Trustee conducted a chapter 7 trustee election. Trustee was duly elected as Chapter 7 Trustee.

*The MCO Bankruptcy Case.*

50.     On January 31, 2020, Must Cure Obesity, Co. filed a voluntary Chapter 11 bankruptcy case, case number 6:20-bk-1801 (the "MCO Bankruptcy Case").

51.     On May 29, 2020, the MCO Bankruptcy Case converted from Chapter 11 to Chapter 7.

52.     On May 29, 2020, Trustee was appointed as the Chapter 7 Trustee in the MCO Bankruptcy Case.

53.     On November 19, 2020, the Court ordered the Juravin Bankruptcy Case and the MCO Bankruptcy Case to be jointly administered.

## FACTUAL ALLEGATIONS

*The Trust Accounts.*

54.     On or about February 13, 2014, the Debtor opened an account in the name of Mr. Zuckerman at Bank Leumi le-Israel B.M., which account was maintained for the Debtor's benefit (the "Zuckerman Trust Account").

55.     The Debtor transferred money from his personal bank accounts and the accounts of some or all of the Juravin Entities to the Trust Account (the "Zuckerman Trust Account Transfers").

56.     As of March 18, 2014, the Zuckerman Trust Account contained a total of at least $196,000.00.

57.     On or about March 2014, the approximately $196,000.00 held in the Zuckerman Trust Account was transferred to an account held at Bank Leumi in Mr. Zuckerman's name.

58.    Additionally, as of at least November 24, 2017, Mr. Ben-Zvi and/or the Ben-Zvi Law Firm also held trust account monies for or on behalf of the Debtor and/or the Juravin Entities (the "Ben-Zvi Trust Account").

59.    The Debtor continued to make transfers to Bank Leumi, or to other accounts held by the Defendants in trust for Debtor or for his benefit.

60.    For example, the Debtor, through the Juravin Entities, made the following transfers:

a.  On or about December 16, 2013, the Debtor, through Roca Labs, transferred approximately $100,000.00 to Bank Leumi.

b.  On or about November 15, 2016, the Debtor transferred approximately $12,000.00 to Bank Leumi.

c.  On or about June 26, 2017, the Debtor, through MCO, transferred approximately $35,000.00 to Bank Leumi.

d.  On or about June 30, 2017, the Debtor, through MCO, transferred approximately $23,500.00 to the Bank Leumi.

61.    As of June 24, 2019, Mr. Zuckerman continued to be a named account holder on account(s) at Bank Leumi held for the Debtor's benefit.

62.    Each of the transfers described herein were made either to fund the Trust Accounts, to fund other accounts held in the Defendants' name for the benefit of the Debtor, or to otherwise thwart, hinder, delay, or defraud present or future creditors of the Debtor and/or the Juravin Entities.

### *The Transfers of the Zuckerman Funds.*

63.    Debtor and the Juravin Entities have transferred significant sums of money to Mr. Zuckerman and/or the Zuckerman Law Firm prior to the Juravin Petition Date.

64.    Mr. Zuckerman and/or the Zuckerman Law Firm opened or maintained bank accounts for additional entities owned or controlled by the Debtor.

65.    During the 90-day period prior to the Juravin Petition Date, Debtor transferred $30,050.00 from his personal accounts to Mr. Zuckerman and/or the Zuckerman Law Firm.

66.    During the one-year period prior the Juravin Petition Date, Debtor transferred at least $245,475.00 from his personal accounts to Mr. Zuckerman and/or the Zuckerman Law Firm.

67.    During the four-year period prior to the Juravin Petition Date, Debtor transferred the following:

a.    Approximately $477,935.00.00 from his personal accounts to Mr. Zuckerman and/or the Zuckerman Law Firm;

b.    Approximately $27,131.89 from JINC's accounts to Mr. Zuckerman and/or the Zuckerman Law Firm;

c.    Approximately $33,000.00 from RLN accounts to Mr. Zuckerman and/or the Zuckerman Law Firm;

d.    Upon information and belief, the Debtor or the Juravin Entities transferred additional property in an unknown amount to Mr. Zuckerman and/or the Zuckerman Law Firm;

(collectively, the "Zuckerman Funds").

68.    The Zuckerman Funds total at least $538,066.89.

69.    At the time the transfers of the Zuckerman Funds occurred, Mr. Zuckerman and/or the Zuckerman Law Firm were aware that the Debtor planned to file for bankruptcy protection and was insolvent.

*The Transfers of the Ben-Zvi Funds.*

70.     Debtor and the Juravin Entities have transferred property to Mr. Ben-Zvi and/or the Ben-Zvi Law Firm prior to the Juravin Petition Date.

71.     Mr. Ben-Zvi, the Ben-Zvi Law Firm, and/or the Zuckerman Law Firm opened or maintained bank accounts for additional entities owned or controlled by the Debtor.

72.     During the four-year period prior to the Juravin Petition Date, Debtor transferred the following:

a.  at least $66,886.33 to Mr. Ben-Zvi or the Ben-Zvi Law Firm, through MCO's bank account;

b.  Upon information and belief, the Debtor or the Juravin Entities transferred additional property in an unknown amount to Mr. Zuckerman and/or the Zuckerman Law Firm;

(collectively, the "Ben-Zvi Funds").

*The Zuckerman Proof of Claim.*

73.     Proof of Claim Number 12 was filed in the Juravin Bankruptcy Case on behalf of Mr. Zuckerman and the Zuckerman Law Firm.

74.     The Debtor or his attorneys or agents prepared Proof of Claim Number 12 and orchestrated its filing.

75.     The Proof of Claim is in the amount of $172,000.00, and purports to be based on a promissory note dated December 28, 2017 in the amount of $172,000.00, executed by Debtor in favor of Mr. Zuckerman (the "December 2017 Note").

76.     On April 15, 2021, the Debtor and First Global Health Corporation executed a promissory note in the amount of $150,000.00 in favor of Mr. Zuckerman (the "April 2021 Note").

77.    Upon information and belief, the December 2017 Note and the April 2021 Note are sham notes that have not been funded by Mr. Zuckerman and/or the Zuckerman Law Firm.

78.    Rather, upon information and belief, the December 2017 Note and the April 2021 Note were created to give the appearance that the Debtor is indebted to Mr. Zuckerman and/or the Zuckerman Law Firm.

79.    In reality, upon information and belief, Debtor transferred money to Mr. Zuckerman and/or the Zuckerman Law Firm to be held and eventually paid to the Debtor or for the Debtor's benefit as described herein.

### *The Ben-Zvi Proof of Claim.*

80.    Proof of Claim Numbers 13 and 14 were filed in the Juravin Bankruptcy Case on behalf of Mr. Ben-Zvi and the Ben-Zvi Law Firm.

81.    The Debtor or his attorneys or agents prepared Proof of Claim Numbers 13 and 14 and orchestrated its filing.

82.    Proof of Claim Number 13 is in the amount of $5,460.00, and purports to be based on a "personal loan" to the Debtor. An attachment to the Proof of Claim purports to reflect payments made by Mr. Ben-Zvi for the Debtor's personal expenses.

83.    Proof of Claim Number 14 is in the amount of $95,161.60. The basis of the claim was left blank.

84.    A purported invoice is attached to the Proof of Claim; however, the vast majority of that invoice is in Hebrew.

85.    Upon information and belief, Proof of Claim Numbers 13 and 14 are sham claims.

86.     Rather, upon information and belief, Proof of Claim Numbers 13 and 14 were created to give the appearance that the Debtor is indebted to Mr. Ben-Zvi and the Ben-Zvi Law Firm.

87.     In reality, upon information and belief, Debtor transferred money to Mr. Ben-Zvi and the Ben-Zvi Law Firm to be held and eventually paid to the Debtor or for the Debtor's benefit as described herein.

### *Discovery Efforts.*

88.     Plaintiff has requested discovery from the Defendants in an effort to further investigate the allegations within this Complaint.

89.     The Defendants have failed and refused and continue to fail and refuse to provide such discovery and documents to the Plaintiff.

### COUNT I: ACTUAL FRAUD
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS
### (Against Mr. Zuckerman and Zuckerman Law Firm)

90.     The Trustee realleges paragraphs 1 through 89 as if fully set forth herein.

91.     This is an adversary proceeding to recover fraudulent transfers pursuant to 11 U.S.C. §§ 544(b)(1), 548 (a)(1)(A) and 550, and Florida Statutes §§ 726.105(1)(a) and 726.108.

92.     During the four (4) years prior to the Juravin Petition Date, Debtor transferred property to Mr. Zuckerman and/or the Zuckerman Law Firm.

93.     According to the Debtor's books and records, during the four-year period prior to the Juravin Petition Date, Debtor transferred the Zuckerman Funds, in the amount of at least $538,066.89, to Mr. Zuckerman and/or the Zuckerman Law Firm.

94.     Mr. Zuckerman and/or the Zuckerman Law Firm held the Zuckerman Funds on or before the Petition Date for the Debtor or for the Debtor's benefit.

95.    Debtor retains control over the Zuckerman Funds and directs the use of the Zuckerman Funds.

96.    Upon information and belief, Mr. Zuckerman and/or the Zuckerman Law Firm held (or currently hold) the Zuckerman Funds with the intention of paying those funds to the Debtor, or for the Debtor's benefit, post-petition.

97.    The transfers of the Zuckerman Funds were made with the actual intent to hinder, delay, or defraud present and future creditors of the Debtor.

98.    At the time of the transfers of the Zuckerman Funds, Debtor was insolvent or became insolvent shortly thereafter.

99.    At the time of the transfers of the Zuckerman Funds, Debtor was insolvent in that his liabilities exceeded his assets.

100.    The transfers of the Zuckerman Funds are avoidable and should be avoided, pursuant to and under Fla. Stat. §§ 726.105(1)(a), 726.108, and 11 U.S.C. §§ 544(b)(1) and 548.

101.    Under 11 U.S.C. § 550(a), the Trustee may recover the Zuckerman Funds for the benefit of the estate, to the extent that the Fraudulent Transfers are avoided under 11 U.S.C. §§ 544 and 548 and FUFTA.

102.    There is at least one creditor holding an unsecured claim under 11 U.S.C. § 502 who would have standing to bring a claim under FUFTA.

WHEREFORE, the Trustee demands a judgment against Mr. Zuckerman and the Zuckerman Law Firm, jointly and severally, as follows: (i) finding that the transfers to, or for the benefit of, Mr. Zuckerman and/or the Zuckerman Law Firm were fraudulent and avoidable under 11 U.S.C. §§ 544(b), 548(a)(1)(A), and 550, and FUFTA; (ii) avoiding the transfers to, or for the benefit of, Mr. Zuckerman and/or the Zuckerman Law Firm and entering a judgment in favor of

the Trustee for the value of the transfers pursuant to 11 U.S.C. § 550, plus pre-judgment interest from the date of the transfers and costs of the suit; (iii) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with applicable law; and (iv) for any such further relief that this Court deems just and proper.

**COUNT II: CONSTRUCTIVE FRAUD**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS**
**(Against Mr. Zuckerman and Zuckerman Law Firm)**

103.     Plaintiff realleges paragraphs 1 through 89 as if fully set forth herein.

104.     This is an adversary proceeding to recover fraudulent transfers pursuant to 11 U.S.C. §§ 544(b)(1), 548 (a)(1)(B) and 550, and Florida Statutes §§ 726.105(1)(b), 726.106(1), and 726.108.

105.     During the four (4) years prior to the Juravin Petition Date, Debtor transferred property to Mr. Zuckerman and/or the Zuckerman Law Firm.

106.     According to the Debtor's books and records, during the four-year period prior to the Juravin Petition Date, Debtor transferred the Zuckerman Funds, in the amount of at least $538,066.89, to Mr. Zuckerman and/or the Zuckerman Law Firm.

107.     Mr. Zuckerman and/or the Zuckerman Law Firm held the Zuckerman Funds on or before the Petition Date for the Debtor or for the Debtor's benefit.

108.     Debtor retains control over the Zuckerman Funds and directs the use of the Zuckerman Funds.

109.     Upon information and belief, Mr. Zuckerman and/or the Zuckerman Law Firm held (or currently hold) the Zuckerman Funds with the intention of paying those funds to the Debtor, or for the Debtor's benefit, post-petition.

110.    At all times material hereto, the Zuckerman Funds constitute property of the Debtor's bankruptcy estate.

111.    Debtor did not receive reasonably equivalent value in exchange for the transfers of the Zuckerman Funds.

112.    At the time of the fraudulent transfers of the Zuckerman Funds, Debtor intended to incur, or reasonably should have believed he would incur, debts beyond his ability to pay them as they became due.

113.    At the time of the fraudulent transfers of the Zuckerman Funds, Debtor was insolvent or became insolvent as a result of the fraudulent transfers, as reflected by the debt owed to the Internal Revenue Service and Federal Trade Commission, among others.

114.    At the time of the fraudulent transfers of the Zuckerman Funds, Debtor's liabilities exceeded his assets.

115.    The transfers are avoidable under Florida Statute §§ 726.105(1)(b), 726.106(1), and 726.108, and 11 U.S.C. § 544(b)(1).

116.    There is at least one actual holder of an allowed unsecured claim under 11 U.S.C. § 502 who would have standing to assert a claim for relief under FUFTA.

117.    Pursuant to 11 U.S.C. § 550(a), the Trustee may recover the transfers for the benefit of the estate, insofar as the transfers are avoided under 11 U.S.C. §§ 544, 548 and FUFTA.

WHEREFORE, the Trustee demands judgment against Mr. Zuckerman and the Zuckerman Law Firm, jointly and severally, as follows: (i) that the transfers to, or for the benefit of, Mr. Zuckerman and/or the Zuckerman Law Firm were fraudulent and avoidable under 11 U.S.C. §§ 544(b), 548 (a)(1)(B) and 550, and FUFTA; (ii) avoiding the transfers to, or for the benefit of, Mr. Zuckerman and/or the Zuckerman Law Firm and entering a judgment in favor of the Trustee for

the value of the transfers, plus pre-judgment interest from the date of the transfers and costs of the suit; (iii) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with applicable law; and (iv) for any such further relief that this Court deems just and proper.

### COUNT III: TURNOVER OF PROPERTY UNDER 11 U.S.C. § 542(a)
### (Against Mr. Zuckerman and Zuckerman Law Firm)

118.    Plaintiff realleges paragraphs 1 through 89 as if fully set forth herein.

119.    This is an adversary proceeding to compel turnover of property pursuant to 11 U.S.C. § 542(a).

120.    Debtor transferred the Zuckerman Funds, in the amount of at least $538,066.89, to Mr. Zuckerman and/or the Zuckerman Law Firm.

121.    Debtor transferred the Zuckerman Trust Account Transfers to Mr. Zuckerman and/or the Zuckerman Law Firm.

122.    Upon information and belief, the transfers of the Zuckerman Funds Zuckerman Trust Account Transfers were made with the intention that Mr. Zuckerman and/or the Zuckerman Law Firm would hold the Zuckerman Funds until after the Debtor's Bankruptcy Case was filed or completed.

123.    Upon information and belief, Debtor made such transfers with the intention that Mr. Zuckerman and/or the Zuckerman Law Firm would funnel the transferred funds back to the Debtor, or for the Debtor's benefit, post-petition.

124.    Debtor retains control over the Zuckerman Funds and the Zuckerman Trust Account and directs the use of those funds.

125.    Upon information and belief, Mr. Zuckerman and/or the Zuckerman Law Firm agreed to hold the Zuckerman Funds and the Zuckerman Trust Account for the benefit of the

Debtor and to subsequently funnel the money back to the Debtor or pay it for his benefit post-petition.

126.    The Zuckerman Funds and the Zuckerman Trust Account are property of the Debtor's Bankruptcy Estate.

127.    The Zuckerman Funds and the Zuckerman Trust Account are subject to administration by the Trustee, including the payment of creditors.

128.    Mr. Zuckerman and/or the Zuckerman Law Firm have an obligation to preserve the status quo as of the Petition Date and to turn over the Zuckerman Funds and the Zuckerman Trust Account to the Trustee.

WHEREFORE, Plaintiff respectfully requests that the Mr. Zuckerman and the Zuckerman Law Firm, jointly and severally, be ordered to surrender possession of the Zuckerman Funds and the Zuckerman Trust Account to the Plaintiff, and for any such further relief that this Court deems just and proper.

### COUNT IV: AVOIDANCE OF PREFERENTIAL TRANSFER
**(Against Mr. Zuckerman and Zuckerman Law Firm)**

129.    Trustee realleges paragraphs 1 through 89 as if fully set forth herein.

130.    This is a count to avoid and recover preferential transfers pursuant to §§ 547 and 550 brought based by the Trustee based on reasonable due diligence in the circumstances of the case and taking into account Mr. Zuckerman and Zuckerman Law Firm's known or reasonably knowable affirmative defenses.

131.    This Count is pled in the alternative to Counts I-III herein in the event that there were actual and legitimate business transactions between the Debtor and Mr. Zuckerman and/or Zuckerman Law Firm.

132.    On or within 90 days before the Petition Date, that is, between August 2, 2018 and October 31, 2018, the Debtor made payments and transferred property, including by check, wire transfers, or otherwise to certain entities, including Mr. Zuckerman and the Zuckerman Law Firm.

133.    The transfers were to or for the benefit of Mr. Zuckerman and the Zuckerman Law Firm during the Preference Period in an amount not less than $30,050.00 (the "Preferential Transfers").

134.    The Preferential Transfers were to or for the benefit of a creditor because the Preferential Transfers either reduced or fully satisfied a debt then owed by Debtor to Mr. Zuckerman and the Zuckerman Law Firm.

135.    The Preferential Transfers were for or on account of an antecedent debt owed by Debtor before the Preferential Transfers were made.

136.    The Preferential Transfers constituted a transfer of an interest of the property of Debtor.

137.    Debtor was insolvent at all times during the Preference Period.

138.    As a result of the Preferential Transfers, Mr. Zuckerman and the Zuckerman Law Firm received more than they would have received if: (i) Debtor's case were under Chapter 7 of the Bankruptcy Code; (ii) the Preferential Transfers had not been made; and (iii) the defendants received payment of their claims under the provisions of the Bankruptcy Code.

139.    The Preferential Transfers are avoidable and should be avoided, pursuant to 11 U.S.C. § 547.

140.    Pursuant to 11 U.S.C. § 550, Trustee is entitled to avoid the full amount of the Preferential Transfers, and recover, for the benefit of the estate, the amount of the Preferential Transfers.

WHEREFORE, the Trustee demands a judgment against Mr. Zuckerman and the Zuckerman Law Firm, jointly and severally, as follows: (i) that the Preferential Transfers to Mr. Zuckerman and the Zuckerman Law Firm were avoidable preferential transfers under 11 U.S.C. §§ 547 and 550; (ii) avoiding the Preferential Transfers pursuant to 11 U.S.C. § 547; (iii) entering a judgment in favor of the Trustee for the value of the amount transferred pursuant to 11 U.S.C. § 550, plus pre-judgment interest from the date of the Preferential Transfers and costs of the suit; and (iv) for any such further relief that this Court deems just and proper.

### COUNT V: AVOIDANCE OF PREFERENTIAL TRANSFER
**(Against Mr. Zuckerman and Zuckerman Law Firm)**

141.    Trustee realleges paragraphs 1 through 89 as if fully set forth herein.

142.    This is a count to avoid and recover preferential transfers pursuant to §§ 547 and 550 brought based by the Trustee based on reasonable due diligence in the circumstances of the case and taking into account Mr. Zuckerman and Zuckerman Law Firm's known or reasonably knowable affirmative defenses.

143.    This Count is pled in the alternative to Counts I-III herein in the event that there were actual and legitimate business transactions between the Debtor and Mr. Zuckerman and/or Zuckerman Law Firm.

144.    Mr. Zuckerman and/or Zuckerman Law Firm are insiders of the Debtor on account of their close relationship and Mr. Zuckerman and/or Zuckerman Law Firm's role as counsel to the Debtor and the Juravin Entities.

145.    On or within 1 year before the Petition Date, that is, between October 31, 2017 and October 31, 2018, the Debtor made payments and transferred property, including by check, wire transfers, or otherwise to certain entities, including Mr. Zuckerman and the Zuckerman Law Firm.

146.    The transfers were to or for the benefit of Mr. Zuckerman and the Zuckerman Law Firm during the Preference Period in an amount not less than $245,475.00 (the "One-Year Transfers").

147.    The One-Year Transfers were to or for the benefit of a creditor because the One-Year Transfers either reduced or fully satisfied a debt then owed by Debtor to Mr. Zuckerman and the Zuckerman Law Firm.

148.    The One-Year Transfers were for or on account of an antecedent debt owed by Debtor before the One-Year Transfers were made.

149.    The One-Year Transfers constituted a transfer of an interest of the property of Debtor.

150.    Debtor was insolvent at all times during the Preference Period.

151.    As a result of the One-Year Transfers, Mr. Zuckerman and the Zuckerman Law Firm received more than they would have received if: (i) Debtor's case were under Chapter 7 of the Bankruptcy Code; (ii) the Preferential Transfers had not been made; and (iii) the defendants received payment of their claims under the provisions of the Bankruptcy Code.

152.    The One-Year Transfers are avoidable and should be avoided, pursuant to 11 U.S.C. § 547.

153.    Pursuant to 11 U.S.C. § 550, Trustee is entitled to avoid the full amount of the One-Year Transfers, and recover, for the benefit of the estate, the amount of the One-Year Transfers.

WHEREFORE, the Trustee demands a judgment against Mr. Zuckerman and the Zuckerman Law Firm, jointly and severally, as follows: (i) that the One-Year Transfers to Mr. Zuckerman and the Zuckerman Law Firm were avoidable preferential transfers under 11 U.S.C. §§ 547 and 550; (ii) avoiding the One-Year Transfers pursuant to 11 U.S.C. § 547; (iii) entering a

judgment in favor of the Trustee for the value of the amount transferred pursuant to 11 U.S.C. §

550, plus pre-judgment interest from the date of the One-Year Transfers and costs of the suit; and

(iv) for any such further relief that this Court deems just and proper.

### COUNT VI: ACTUAL FRAUD
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS
#### (Against Mr. Ben-Zvi and the Ben-Zvi Law Firm)

154.    The Trustee realleges paragraphs 1 through 89 as if fully set forth herein.

155.    This is an adversary proceeding to recover fraudulent transfers pursuant to 11

U.S.C. §§ 544(b)(1), 548 (a)(1)(A) and 550, and Florida Statute §§ 726.105(1)(a) and 726.108.

156.    During the four (4) years prior to the Juravin Petition Date, Debtor transferred

property to Mr. Ben-Zvi and the Ben-Zvi Law Firm.

157.    According to the Debtor's books and records, during the four-year period prior to

the Juravin Petition Date, Debtor transferred the Ben-Zvi Funds to Mr. Ben-Zvi and the Ben-Zvi

Law Firm.

158.    Mr. Ben-Zvi and the Ben-Zvi Law Firm held the Ben-Zvi Funds on or before the

Petition Date for the Debtor or for the Debtor's benefit.

159.    Debtor retains control over the Ben-Zvi Funds and directs the use of the Ben-Zvi

Funds.

160.    Upon information and belief, Mr. Zuckerman and/or the Zuckerman Law Firm held

(or currently hold) the Ben-Zvi Funds with the intention of paying those funds to the Debtor, or

for the Debtor's benefit, post-petition.

161.    The transfers of the Ben-Zvi Funds were made with the actual intent to hinder,

delay, or defraud present and future creditors of the Debtor.

162.    At the time of the transfers of the Ben-Zvi Funds, Debtor was insolvent or became insolvent shortly thereafter.

163.    At the time of the transfers of the Ben-Zvi Funds, Debtor was insolvent in that his liabilities exceeded his assets.

164.    The transfers of the Ben-Zvi Funds are avoidable and should be avoided, pursuant to and under Fla. Stat. §§ 726.105(1)(a), 726.108, and 11 U.S.C. §§ 544(b)(1) and 548.

165.    Under 11 U.S.C. § 550(a), the Trustee may recover the Ben-Zvi Funds for the benefit of the estate, to the extent that the Fraudulent Transfers are avoided under 11 U.S.C. §§ 544 and 548 and FUFTA.

166.    There is at least one creditor holding an unsecured claim under 11 U.S.C. § 502 who would have standing to bring a claim under FUFTA.

WHEREFORE, the Trustee demands a judgment against Mr. Ben-Zvi and the Ben-Zvi Law Firm, jointly and severally, as follows: (i) finding that the transfers to, or for the benefit of, Mr. Ben-Zvi and the Ben-Zvi Law Firm were fraudulent and avoidable under 11 U.S.C. §§ 544(b), 548(a)(1)(A), and 550, and FUFTA; (ii) avoiding the transfers to, or for the benefit of, Mr. Ben-Zvi and the Ben-Zvi Law Firm and entering a judgment in favor of the Trustee for the value of the transfers pursuant to 11 U.S.C. § 550, plus pre-judgment interest from the date of the transfers and costs of the suit; (iii) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with applicable law; and (iv) for any such further relief that this Court deems just and proper.

### COUNT VII: CONSTRUCTIVE FRAUD
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS
### (Against Mr. Ben-Zvi and the Ben-Zvi Law Firm)

167.    Plaintiff realleges paragraphs 1 through 89 as if fully set forth herein.

168.    This is an adversary proceeding to recover fraudulent transfers pursuant to 11 U.S.C. §§ 544(b)(1), 548 (a)(1)(B) and 550, and Florida Statutes §§ 726.105(1)(b), 726.106(1), and 726.108.

169.    During the four (4) years prior to the Juravin Petition Date, Debtor transferred property to Mr. Ben-Zvi and the Ben-Zvi Law Firm.

170.    According to the Debtor's books and records, during the four-year period prior to the Juravin Petition Date, Debtor transferred the Mr. Ben-Zvi and the Ben-Zvi Law Firm.

171.    Mr. Ben-Zvi and the Ben-Zvi Law Firm held the Ben-Zvi Funds on or before the Petition Date for the Debtor or for the Debtor's benefit.

172.    Debtor retains control over the Ben-Zvi Funds and directs the use of the Ben-Zvi Funds.

173.    Upon information and belief, Mr. Ben-Zvi and the Ben-Zvi Law Firm held (or currently hold) the Ben-Zvi Funds with the intention of paying those funds to the Debtor, or for the Debtor's benefit, post-petition.

174.    At all times material hereto, the Ben-Zvi Funds constitute property of the Debtor's bankruptcy estate.

175.    Debtor did not receive reasonably equivalent value in exchange for the transfers of the Ben-Zvi Funds.

176.    At the time of the fraudulent transfers of the Ben-Zvi Funds, Debtor intended to incur, or reasonably should have believed he would incur, debts beyond his ability to pay them as they became due.

177.   At the time of the fraudulent transfers of the Ben-Zvi Funds, Debtor was insolvent or became insolvent as a result of the fraudulent transfers, as reflected by the debt owed to the Internal Revenue Service and Federal Trade Commission, among others.

178.   At the time of the fraudulent transfers of the Ben-Zvi Funds, Debtor's liabilities exceeded his assets.

179.   The transfers are avoidable under §§ 726.105(1)(b), 726.106(1), and 726.108, and 11 U.S.C. § 544(b)(1).

180.   There is at least one actual holder of an allowed unsecured claim under 11 U.S.C. § 502 who would have standing to assert a claim for relief under FUFTA.

181.   Pursuant to 11 U.S.C. § 550(a), the Trustee may recover the transfers for the benefit of the estate, insofar as the transfers are avoided under 11 U.S.C. §§ 544, 548 and FUFTA.

WHEREFORE, the Trustee demands judgment against Mr. Ben-Zvi and the Ben-Zvi Law Firm, jointly and severally, as follows: (i) that the transfers to, or for the benefit of, Mr. Ben-Zvi and the Ben-Zvi Law Firm were fraudulent and avoidable under 11 U.S.C. §§ 544(b), 548 (a)(1)(B) and 550, and FUFTA; (ii) avoiding the transfers to, or for the benefit of, Mr. Ben-Zvi and the Ben-Zvi Law Firm and entering a judgment in favor of the Trustee for the value of the transfers, plus pre-judgment interest from the date of the transfers and costs of the suit; (iii) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with applicable law; and (iv) for any such further relief that this Court deems just and proper.

## COUNT VIII: TURNOVER OF PROPERTY
### (Against Mr. Ben-Zvi and the Ben-Zvi Law Firm)

182.   Plaintiff realleges paragraphs 1 through 89 as if fully set forth herein.

183.    This is an adversary proceeding to compel turnover of property pursuant to 11 U.S.C. § 542(a).

184.    Debtor transferred the Beni-Zvi Funds to Mr. Ben-Zvi and the Ben-Zvi Law Firm.

185.    Debtor transferred the funds in the Ben-Zvi Trust Account to Mr. Ben-Zvi and the Ben-Zvi Law Firm.

186.    Upon information and belief, the transfers of the Ben-Zvi Funds and the funds in the Ben-Zvi Trust Account were made with the intention that Mr. Ben-Zvi and the Ben-Zvi Law Firm would hold these funds until after the Debtor's Bankruptcy Case was filed or completed.

187.    Upon information and belief, Debtor made such transfers with the intention that Mr. Ben-Zvi and the Ben-Zvi Law Firm would funnel the transferred funds back to the Debtor, or for the Debtor's benefit, post-petition.

188.    Debtor retains control over the Ben-Zvi Funds and the Ben-Zvi Trust Account and directs the use of those funds.

189.    Upon information and belief, Mr. Ben-Zvi and the Ben-Zvi Law Firm agreed to hold the Ben-Zvi Funds and the Ben-Zvi Trust Account for the benefit of the Debtor and to subsequently funnel the money back to the Debtor or pay it for his benefit post-petition.

190.    The Ben-Zvi Funds and the Ben-Zvi Trust Account are property of the Debtor's Bankruptcy Estate.

191.    The Ben-Zvi Funds and the Ben-Zvi Trust Account are subject to administration by the Trustee, including the payment of creditors.

192.    Mr. Ben-Zvi and the Ben-Zvi Law Firm have an obligation to preserve the status quo as of the Petition Date and to turn over the Ben-Zvi Funds and the Ben-Zvi Trust Account to the Trustee.

WHEREFORE, Plaintiff respectfully requests that the Mr. Ben-Zvi and the Ben-Zvi Law Firm, jointly and severally, be ordered to surrender possession of the Ben-Zvi Funds and the Ben-Zvi Trust Account to the Plaintiff, and for any such further relief that this Court deems just and proper.

Dated October 4, 2021.

/s/Bradley M. Saxton
Bradley M. Saxton, Esquire
Florida Bar No. 0855995
bsaxton@whww.com
Lauren M. Reynolds, Esquire
Florida Bar No. 112141
Lreynolds@whww.com
**Winderweedle, Haines, Ward**
**& Woodman, P.A.**
Post Office Box 880
Winter Park, FL 32790-0880
(407) 423-4246
(407) 645-3728 (facsimile)
Attorneys for Dennis D. Kennedy,
Trustee

-and-

/s/James D. Ryan
James D. Ryan, Esquire
Florida Bar No. 0976751
jdr@ryanlawgroup.net
lauren@ryanlawgroup.net
**Ryan Law Group, PLLC**
636 U.S. Highway One, Suite 110
North Palm Beach, FL 33408
Main: (561) 881-4447   Fax: (561) 881-4461
Special Counsel to Dennis D. Kennedy, Trustee